IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

COLLEEN MARIE NAPLES, )
)
      Plaintiff, )
)
  v. ) Civil Action No. 17-267-E
)
COMMISSIONER OF SOCIAL SECURITY, )
)
      Defendant. )

O R D E R

AND NOW, this 29th day of March, 2019, upon consideration of the parties' cross motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision, denying Plaintiff's claim for disability insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C. § 401 et seq., and denying Plaintiff's claim for supplemental security income benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. § 405(g); Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal

court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] Plaintiff claims, generally, that the Administrative Law Judge ("ALJ") erred by: (1) improperly analyzing her mental impairments; (2) improperly analyzing her physical impairments; and (3) improperly formulating her residual functional capacity assessment ("RFC"). The Court disagrees and finds that substantial evidence supports the ALJ's findings as well as his ultimate determination, based on all the evidence presented, of Plaintiff's non-disability.

Plaintiff contends that the ALJ's most egregious error is finding that her mental impairments do not meet the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, (the "Listings") at Step Three of the sequential analysis. (Doc. No. 10, at 8). Specifically, Plaintiff argues that the ALJ erred by evaluating her impairments using the Listings that were in place at the time of his decision, but which were later changed. Instead, Plaintiff asserts that the ALJ should have assessed Plaintiff's impairments using the new revised Listings. However, the Listings were revised effective January 17, 2017, five months after the ALJ's decision, so such consideration would obviously have been impossible. Moreover, the Social Security Regulations clearly indicate that the new Listings were not to be used until on or after their effective date, and that Courts are expected to review the Commissioner's final decisions using the rules that were in effect at the time the ALJs issued their decisions. See 81 Fed. Reg. 66138-01, n.1 (Sept. 26, 2016). Accordingly, the Court finds that the ALJ did not err in applying the Listings that were in effect at the time of his decision. Furthermore, although Plaintiff does not actually make such an argument, in the interest of thoroughness, the Court will also consider whether the ALJ erred in evaluating Plaintiff's impairments under the Listings in effect at the time of his decision.

Because the ALJ found that Plaintiff has certain severe impairments, including diabetes mellitus, hypertension, asthma, obesity, obstructive sleep apnea, osteoarthritis of the bilateral knees, intermittent explosive disorder/impulse control disorder, learning disorder, major depressive disorder, bipolar disorder, borderline intellectual functioning, anxiety, and borderline personality disorder, Plaintiff does have a condition or conditions that could potentially qualify as a disorder under one or more of the Listings. (R. 13-14). The Court notes, however, that the Listings operate as a regulatory device used to streamline the decision-making process by identifying claimants whose impairments are so severe that they may be presumed to be disabled. See 20 C.F.R. §§ 404.1525(a), 416.925(a). Since the Listings define impairments that would prevent a claimant from performing any gainful activity—not just substantial gainful activity—the medical criteria contained in the Listings are set at a higher level than the statutory standard for disability. See Sullivan v. Zebley, 493 U.S. 521, 532 (1990). Thus, a claimant has the burden of proving a presumptively disabling impairment by presenting medical evidence that meets all of the criteria of a listed impairment or is equal in severity to all of the criteria for the most similar listed impairment. See 20 C.F.R. §§ 404.1526, 416.926.

2

With regard to the mental impairments at issue in this case, the ALJ specified in his decision that Plaintiff's mental impairments had been considered singly and in combination under Listings 12.02, 12.04, 12.05, 12.06 and 12.08, but that her impairments "do not meet or medically equal the criteria" of any of those listed impairments. (R. 14). According to the statute, in considering whether the required level of severity for these Listings is met, an ALJ has to consider "whether the 'paragraph B' criteria ('paragraph D' criteria of listing 12.05) are satisfied." (R. 14; 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.02, 12.04, 12.05, 12.06, 12.08). As the ALJ explained in his analysis, in order to satisfy the paragraph B criteria of these Listings (paragraph D criteria of Listing 12.05), Plaintiff's impairments have to result in at least two of four of the following limitations: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (R. 14-15).

The ALJ reviewed and discussed Plaintiff's symptoms and treatment at length in his decision, but he ultimately found that the above-stated requirements were simply not met or medically equaled. Moreover, the Court finds that, in evaluating Plaintiff's claims, the ALJ reviewed the evidence of record in sufficient detail to support his conclusions. In fact, the ALJ clearly and thoroughly addressed the evidence relevant to the above elements, but concluded that, despite her impairments, the objective findings, and the subjective allegations, Plaintiff has only mild or moderate limitations. Specifically, the ALJ found that Plaintiff has only a mild restriction in activities of daily living based in part on her independence in self-care and her ability to prepare meals and do household chores, shop, leave her home independently, and engage in hobbies. (R. 15). The ALJ also found that Plaintiff has moderate difficulties in social functioning based in part on her regularly spending time with others and "hanging out," but also because she endorses having some difficulty interacting with others. (R. 15). Likewise, the ALJ found that Plaintiff has moderate difficulties with regard to concentration, persistence, or pace based in part on her reportedly having no difficulty sustaining attention for manual tasks or understanding, remembering or carrying out instructions, but having trouble sustaining conversation and coping with stress or changes in routine. (R. 15). Finally, the ALJ found that Plaintiff has experienced no episodes of decompensation of extended duration. (R. 15). The Court notes that "episodes of decompensation" are specifically defined in the statute as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning . . . . that would ordinarily require increased treatment or a less stressful situation . . . . and may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household)." 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(C)(4). Plaintiff does not cite to evidence indicating the existence of any such episodes, nor does the Court find evidence of such episodes in the record.

Accordingly, because Plaintiff has not presented evidence sufficient to meet her burden of proving that her impairments have caused at least two marked limitations, or one marked limitation and repeated episodes of decompensation of extended duration, the Court finds that the ALJ appropriately found that the paragraph B criteria of the Listings under 12.00 were not

3

satisfied. (R. 14). Additionally, there is also no evidence of record to establish that Plaintiff meets the paragraph C criteria of these Listings. (R. 16). Furthermore, the ALJ specifically addressed the requirements of Listing 12.05, which does not require the B criteria (here, D criteria) findings if other criteria are met, and he clearly explained why those other criteria were not met as well. (R. 16). Thus, after close review of the ALJ's decision as a whole, the Court finds that the ALJ did not err in finding that Plaintiff's mental impairments did not meet the severity of any of the 12.00 Listings.

Plaintiff also makes several more general claims as to how, even if the Court does not find that the ALJ erred in his analysis of the Listings, he improperly assessed her mental impairments in other ways. For instance, Plaintiff states that the ALJ erred in assessing her intellectual capabilities, essentially attacking the ALJ's residual functional capacity assessment ("RFC"). A claimant's RFC is the most that a claimant can do despite his or her limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of a claimant's RFC is solely within the province of the ALJ. See 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c), 416.927(d)(2), 416.946(c). In formulating a claimant's RFC, the ALJ must weigh the evidence as a whole, including medical source opinions and credibility of a claimant's subjective complaints. See 20 C.F.R. §§ 404.1527, 404.1529, 404.1545, 416.927, 416.929, 416.945. Furthermore, "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011); see also 20 C.F.R. §§ 404.1527(d)(2); 404.1546(c); 416.927(d)(2), 416.946(c); S.S.R. 96-5p, 1996 WL 374183 (1996). An ALJ is not limited to choosing between competing opinions in the record, and may instead develop his or her own. See 20 CFR §§ 404.1546(c); 416.946(c). Therefore, the ALJ is not required to rely only on a particular physician's opinion, and the RFC finding is actually an administrative—rather than a medical—determination. See 96-5p, 1996 WL 374183, *5 (1996).

In this case, the Court finds that the ALJ reviewed the evidence of record at length, including the medical opinions, and properly formulated Plaintiff's RFC. The ALJ clearly acknowledged Plaintiff's borderline intellectual functioning in his decision, and tailored the RFC accordingly. Although Plaintiff objects to the ALJ's assessment of her intellectual abilities, the Court finds that the evidence she cites from the medical opinions does not refute the ALJ's findings. Moreover, the ALJ explained that he gave great weight to the opinion of state agency psychological consultant Valorie Rings, Psy.D., and significant weight to the findings of consultative examiners Cynthia Wright, D.Ed., and Danelle Carrillo Bennett, Ph.D., while specifically noting that Dr. Bennett did not seem to indicate that Plaintiff was actually disabled. (R. 20-21). The ALJ also considered the summary of Plaintiff's caseworker, and assigned it some weight, but explained that it was not well explained and appears somewhat inconsistent with Plaintiff's treatment records. (R. 21). The ALJ also fully discussed Plaintiff's medical records, including her various psychiatric hospitalizations, but noted that they appear to be correlated with situational stressors as well as non-compliance with treatment. (R. 20).

Thus, the ALJ found that the evidence of record regarding her mental impairments fails to support fully her allegations of disability, and he properly considered the various medical opinions, explained the weight he gave to each of them, and formulated a significantly restrictive

RFC consistent with those opinions. That RFC included limiting Plaintiff to simple, routine, repetitive tasks consistent with SVP 1 or 2 involving no more than simple, work-related decisions and few workplace changes; no more than occasional interaction with supervisors, coworkers and the public, and no work requiring the performance of tandem tasks. (R. 16). Although Plaintiff contends that her actual mental limitations are not properly considered in the RFC, she does not explain how the RFC fails to accommodate the limitations that are supported by the evidence, and the Court does not agree that the RFC is inconsistent with such limitations.

Plaintiff's last objection to the ALJ's analysis of her mental limitations is that he did not properly consider her personality disorder under Listing 12.08. As the Court has already addressed the ALJ's proper consideration of the B criteria necessary for such a finding, supra, repeated discussion is unnecessary. However, Plaintiff further states that, even if the Court does not find that she meets that Listing, the ALJ has misjudged the effect of her symptoms on her overall ability to function at work. In support of this general argument, Plaintiff points to the policy regarding mental limitations contained in the Social Security Administration's Program Operations Manual System ("POMS") DI 25020.010. Plaintiff cites therein to the various mental abilities listed as necessary for the performance of unskilled work, and submits that because Plaintiff does not have all of these abilities, the ALJ obviously erred in finding her capable of performing such work.

However, the Court notes, first, that the ALJ did not find that Plaintiff had limitations indicating that she could not perform unskilled work. Second, while the POMS states that a substantial loss of ability to meet any of the listed basic mental demands severely limits the potential occupational base, the Social Security Regulations further provide that, "[w]here the extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource." See SSR 83-12, 1983 WL 31253,*2 (1983). Moreover, the regulation specifies that "[v]ocational experts may testify for this purpose at the hearing and appeals levels." Id. Thus, a vocational expert ("VE") can then "assess the effect of any limitation on the range of work at issue (e.g., the potential occupational base); advise whether the impaired person's RFC permits him or her to perform substantial numbers of occupations within the range of work at issue; identify jobs which are within the RFC, if they exist; and provide a statement of the incidence of such jobs in the region in which the person lives or in several regions of the country." Id. at *3. This is exactly what was done in this case. The ALJ considered the evidence of record regarding Plaintiff's mental impairments and properly consulted a VE to determine, to the extent that Plaintiff had any limitations in her abilities that eroded the occupational base, whether there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, and the VE testified that there were. (R. 78-87). Accordingly, the Court concludes that the ALJ did not err in considering the effect of Plaintiff's mental limitations on her ability to perform work.

Thus, the Court finds that the ALJ did not err in analyzing Plaintiff's mental limitations, under the Listings or otherwise.

Plaintiff also argues generally, without citing any specific Listings, that the ALJ erred in finding that none of her physical impairments meet the severity the Listings. As noted, supra,

the ALJ found that Plaintiff had various severe physical impairments that could potentially qualify as a disorder or disorders under the Listings. However, the ALJ specified in his decision that, although Plaintiff's physical impairments had been evaluated under Listing 1.02, dealing with the musculoskeletal system, Listings 3.03, 3.09, and 3.10, dealing with the respiratory system, and Listing 9.00, dealing with the endocrine system, those impairments "considered both singly and in combination, do not meet or medically equal the requirements" of any of those listed impairments. (R. 14). The Court finds that the ALJ conducted a detailed review and discussion of the evidence of record, and he reasonably found that such evidence does not establish that Plaintiff's physical impairments meet or medically equal the severity of any of the Listings. (R. 14-21). See Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004) (noting that there must be sufficient development of the record and explanation of findings to permit meaningful review, and that the ALJ's decision is to be read as a whole, showing that the ALJ considered the appropriate factors in concluding that a claimant did not meet the requirements for a Listing); see also Scuderi v. Comm'r of Soc. Sec., 302 Fed. Appx. 88, 90 (3d Cir. 2008) (each Listing need not be specifically mentioned, "provided that the ALJ's decision clearly analyzes and evaluates the relevant medical evidence as it relates to the Listing requirements"). Thus, after close review of the ALJ's decision as a whole, the Court finds no merit in Plaintiff's argument that the ALJ erred in failing to find that her physical impairments meet the severity of one of the Listings.

As with her argument regarding her mental impairments, Plaintiff also appears to vaguely contend that, even if the ALJ did not err in finding that one or more of her physical impairments did not meet one of the Listings, he erred by failing to include the full extent of her physical limitations in her RFC. In support of this claim, Plaintiff emphasizes her obesity, notes various symptoms, and explains that the combination of these impairments should have been found to be disabling.

The Court finds that there is no merit in Plaintiff's contention that the ALJ failed to consider adequately the effect of Plaintiff's obesity on her other impairments. Social Security Ruling 02-1p explains that in 1999 the Social Security Administration removed obesity as a listed impairment because obesity alone does not "represent a degree of functional limitation that would prevent an individual from engaging in any gainful activity." 2002 WL 34686281, at *1 (Sept. 12, 2002). However, the regulation further provides that, because the effects of obesity in conjunction with other impairments can be greater than the effects of such impairments when considered individually, an ALJ must explain how a conclusion was reached regarding whether obesity caused any limitations for a claimant. See id. at *6-7; see also Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009) (finding that morbid obesity would seem to have an exacerbating effect on a joint disfunction as a matter of common sense, if not from a medical diagnosis).

In the present case, the Court finds that the ALJ clearly and sufficiently addressed this issue in his decision. The ALJ reviewed and discussed the evidence of record, and he specifically included obesity among Plaintiff's severe impairments. The ALJ noted, twice, in his decision that Plaintiff testified to standing 5'2" in height and weighing 260 pounds, yielding a body mass index of 47.5. (R. 17, 20). The ALJ also expressly stated that, although no listing presently exists for obesity, her obesity both by itself and in conjunction with her other

impairments had been considered. (R. 14). The ALJ also noted, twice, that Plaintiff's hypothyroidism exacerbates her weight problem and is addressed by consideration of her obesity. (R. 14, 17). The ALJ also acknowledged Plaintiff's testimony that "her obesity slows her down." (R. 18). He further indicated that Plaintiff's knee pain is likely aggravated by her obesity. (R. 20). Accordingly, taking into consideration all of Plaintiff's various credibly established limitations—while also taking into consideration her rather extensive daily activities—the ALJ limited her to work at only the light exertional level with the ability to sit, stand, or walk, each for a total of 6 hours out of an 8 hour workday. (R. 16, 20). The Court also notes that the record contains no medical opinions or other evidence specifically indicating that Plaintiff's obesity contributes to her alleged inability to perform work, nor has Plaintiff herself cited evidence in the record indicating that this is indeed the case. Accordingly, Plaintiff's general assertion that the ALJ did not adequately take into account her obesity in combination with her other impairments to find her disabled is meritless.

Moreover, the ALJ considered the evidence of record regarding Plaintiff's other physical impairments and thoroughly discussed them in his decision, but ultimately found that the evidence fails to support fully her allegations of disability. With regard to Plaintiff's type II diabetes mellitus, the ALJ found that, although her blood glucose levels are sometimes uncontrolled, this appears to be due to an element of noncompliance. (R. 19). The ALJ further found that the symptoms from her hypertension, asthma and obstructive sleep apnea did not appear to be disabling. (R. 19-20). Additionally, the ALJ found that x-rays of Plaintiff's knees revealed only mild degenerative changes and accordingly limited her to work at a light exertional level with the ability to sit, stand, or walk for approximately 6 hours out of an 8 hour day, but reasonably found that no additional physical restrictions (other than avoiding exposure to pulmonary irritants) are necessary. (R. 20).

Thus, the Court finds that the ALJ did not err in analyzing Plaintiff's physical limitations, under the Listings or otherwise.

Third, Plaintiff argues generally that the ALJ's RFC is not supported by the evidentiary record. In support of her argument, Plaintiff states that nothing in the evidence shows that she could actually perform the work described in her RFC. As stated above, the determination of a claimant's RFC is solely within the province of the ALJ. See 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c), 416.927(d)(2), 416.946(c). Moreover, a claimant's RFC is the most that a claimant can do despite his or her limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). As previously discussed, the Court finds that the ALJ's RFC is supported by substantial evidence in this case.

Nevertheless, Plaintiff further claims that, because her RFC is erroneous, the ALJ's finding of the existence of available jobs that she could perform based on that RFC must fail. (Doc. No. 10, at 17). According to the ALJ's RFC in this case, Plaintiff was capable of performing light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with certain additional limitations. (R. 16). Because Plaintiff's ability to perform all or substantially all of the requirements of this level of work was impeded by additional impairments, the ALJ properly sought the advice of a VE to determine the effect that Plaintiff's additional limitations had on the work available to her. Thus, the ALJ posed a series of hypothetical questions to the VE,

inquiring whether an individual with Plaintiff's age, education, work experience and RFC could perform jobs that exist in significant numbers in the national economy. (R. 22, 78-87). In response, the VE testified that such an individual could in fact perform the requirements of representative occupations such as routing clerk (41,000 jobs nationally), bottle packer (9,000 jobs nationally), and collator operator (15,000 jobs nationally). (R. 22, 81). The ALJ subsequently concluded, based on this testimony, that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and that a finding of "not disabled" was therefore appropriate. (R. 22). Because the Court finds that the ALJ's RFC is supported by substantial evidence, the Court does not find that the ALJ erred in posing his hypothetical question to the VE, and in subsequently finding the existence of jobs that Plaintiff could perform, based on that RFC.

Lastly, Plaintiff contends that the jobs supplied by the VE in response to the ALJ's hypothetical question are not consistent with the RFC, and that she cannot actually perform the jobs supplied by the VE at the hearing. The Court notes that remand is not necessary in cases involving inconsistencies where the ALJ asked the VE whether the testimony was consistent with the DOT and where certain factors are met, including where: Plaintiff did not seriously argue an inability to perform the jobs in question and the record supports a finding that he or she can perform such work; Plaintiff did not point out the conflict at the hearing; and the challenged jobs were only representative samples. See Seifert v. Comm'r of Soc. Sec., 2017 WL 1209574, at *1, n.1 (Mar. 30, 2017).

Here, the ALJ asked the VE at the hearing whether the testimony was consistent with the DOT, Plaintiff did not point out any conflict at the hearing, and the jobs supplied by the VE were provided as "examples," or as representative samples. (R. 78-87). Further, although Plaintiff contends that she could not perform the job of routing clerk because of certain intellectual requirements and social interactions that could be necessary, Plaintiff provides no clear argument as to why she could not perform the other jobs provided by the VE, bottle packer and collator operator. Moreover, the Court finds that the record itself does not support her claims that she cannot perform such work. Because the Court finds that substantial evidence supports the finding that Plaintiff could perform the work of two of the three positions found by the ALJ, it does not reach the issue of whether she could also have performed the third. Thus, the Court finds that the ALJ did not err in finding that, based on Plaintiff's age, education, work experience and RFC, jobs exist in significant numbers in the national economy that Plaintiff can perform.

As to any additional arguments mentioned summarily by Plaintiff in her brief, the Court finds that Plaintiff has failed to establish how the ALJ's failure to consider properly any additional evidence of record constitutes reversible error.

In sum, the ALJ addressed all relevant evidence in the record and thoroughly discussed the basis for his RFC finding. After careful review of the record, the Court finds that the ALJ did not err in concluding that Plaintiff's impairments failed to meet the severity of one of the Listings, nor did he err in evaluating Plaintiff's mental and physical impairments and in formulating Plaintiff's RFC. Additionally, the Court finds that the ALJ did not err in relying on that RFC to pose his hypothetical question to the VE, and he properly found that jobs exist in

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 9) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 11) is GRANTED.

s/ Alan N. Bloch<br>United States District Judge

ecf: Counsel of record

---

significant numbers in the national economy that Plaintiff can perform. Accordingly, the Court affirms.